## S98A1860. KELLY v. THE STATE.
(511 SE2d 169)

THOMPSON, Justice.

Jerry Wayne Kelly was convicted of malice murder, felony murder, armed robbery, and concealing a death, resulting from the shooting death of Bobby Lynn Merrell. He appeals from the judgments of conviction.[1] Finding no reversible error, we affirm.

On the night of the shooting, Kelly, accompanied by Merrell, drove his pick-up truck to the home of co-defendant Boyd Linn Marlow.[2] Marlow's wife and father identified Merrell as a passenger and saw Marlow get into the truck and the three men drive off together. After they consumed several beers, Kelly drove the truck off the road and stopped so that the men could relieve themselves. The victim was intoxicated and fell to the ground. While he was attempting to get up, Kelly stood over him and fatally shot him twice in the chest with a .32 caliber handgun. Kelly pointed the gun at Marlow and threatened to kill him and his family if he were to reveal the crimes

---

[1] The crimes occurred on September 8, 1997. An indictment was returned on December 4, 1997, charging Kelly with malice murder, felony murder with the underlying felony of armed robbery, armed robbery, and concealing a death. Trial commenced on March 23, 1998, and on March 25, 1998, a jury found Kelly guilty of all charges. Sentencing took place on April 3, 1998, at which time the felony murder conviction was vacated and a life sentence was imposed for malice murder, twenty consecutive years for armed robbery, and ten consecutive years for concealing a death. A motion for new trial was filed on April 23, 1998, and amended on July 15, 1998. The amended motion for new trial was denied on July 21, 1998. A notice of appeal was filed on August 6, 1998, and the case was docketed in this Court on August 18, 1998. The case was submitted for decision on briefs on October 12, 1998.

[2] Marlow was indicted for felony murder, armed robbery and concealing a death. He pled guilty to concealing a death and testified for the State at Kelly's trial.

to anyone.

Kelly took the victim's wallet from his pocket and then he and Marlow forced the body headfirst into an abandoned well several feet away. The two drove to Kelly's property where they cleaned the victim's blood from their bodies and burned some bloody clothing along with the victim's wallet. They then drove to a store to purchase cleaning supplies and spray paint. Upon returning to the crime scene, they cleaned the victim's blood from the concrete slab surrounding the well, and spray-painted the well opening to destroy evidence of their crimes. Kelly instructed Marlow to dispose of the murder weapon and again reiterated his threat to kill him and his family if he were to tell anyone about the murder. He also explained to Marlow that he killed Merrell to prove a point to his estranged wife and to force her to come back to him.

Marlow returned to his home the next morning and appeared visibly upset. Later that day, he divulged to his wife and parents the events of the previous night.

Three weeks later, Marlow turned himself into authorities, confessed to his involvement in the crimes, and directed the officers to the location of the body. He also assisted the police in recovering the murder weapon which he had left with a relative in Tennessee. Merrell's body was retrieved from the well, and although certain valuables were still on his person, his wallet was missing.

Kelly was arrested shortly thereafter while attempting to flee from a uniformed officer. Police found two spent .32 caliber bullets and eight shell casings in an area where Kelly had practiced firing the murder weapon earlier on the day of the killing. It was determined that these and a bullet recovered from the victim's body were all fired from Kelly's .32 caliber handgun.

Kelly's estranged wife testified that her husband continuously threatened to kill her and members of her family if she did not move back into the marital residence with him. He also told her that if she refused to come home he would kill three other people and had already killed one. He later told her that he was responsible for Merrell's disappearance, and described the location of Merrell's truck. Ms. Kelly then informed the investigating officer that she feared her husband had carried out his threats by killing Merrell to demonstrate he was serious about killing her.

Kelly had also threatened the life of his girlfriend. She testified that he told her he had killed Merrell and that she should also believe his threats against her life.

1. Kelly challenges the sufficiency of the evidence, asserting that the State failed to establish motive, and that State's witnesses Marlow and Ms. Kelly lacked credibility because their testimony was refuted during the defense case.

Motive is not an essential element in proving the crime of murder. *Butler v. State*, 266 Ga. 537 (1) (468 SE2d 369) (1996). The credibility of witnesses and any conflicts in the evidence were properly resolved by the jury. *Holmes v. State*, 269 Ga. 124 (1) (498 SE2d 732) (1998); *Hodnett v. State*, 269 Ga. 115 (1) (498 SE2d 737) (1998).

2. Kelly further submits that the court erred in denying his motions for directed verdict of acquittal as to armed robbery and felony murder with armed robbery as the underlying felony, because the only evidence of armed robbery came from the uncorroborated testimony of an accomplice in violation of OCGA § 24-4-8.

First, based on Marlow's testimony that he had no knowledge that Kelly was planning to murder Merrell and that he acted in compliance with Kelly's orders only because he feared for his own life, the question of whether Marlow acted as Kelly's accomplice was properly submitted to the jury. *Milton v. State*, 248 Ga. 192 (2) (282 SE2d 90) (1981). Where a witness testifies that he acted out of fear and coercion, and not as the result of free will, it is for the jury to make the determination as to whether the witness is an accomplice. Id. And if a witness is found not to be an accomplice due to coercion, the requirement of corroboration in a murder trial is eliminated. Id. at 197. Because the jury was authorized to conclude that Marlow was not an accomplice, corroboration was not required.

But even assuming arguendo that Marlow acted as Kelly's accomplice, we have held that in a murder trial, where there is no independent corroboration of an armed robbery which was simultaneous with and an integral part of the murder transactions, "corroboration of the murder is adequate . . . to corroborate the accomplice's testimony as to the entire unified transaction including the armed robbery." *Wilson v. State*, 235 Ga. 470, 476 (5) (219 SE2d 756) (1975). Here, as in *Wilson*, corroboration of the murder is sufficient to corroborate the armed robbery. It follows that the trial court properly denied Kelly's motions for directed verdict of acquittal as to armed robbery and felony murder.

3. The evidence was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to enable a rational finder of fact to find Kelly guilty beyond a reasonable doubt of each of the charged crimes.

4. Kelly asserts that the trial court erred in denying his pretrial motion in limine and admitting into evidence: (a) pre-autopsy photographs of the victim; (b) threats made by Kelly to kill various people; and (c) a handgun, knives, and illegal drugs found in Kelly's possession at the time of his arrest.

(a) Two of the three photographs pictured Merrell's clothed body immediately after its removal from the well; the third showed the bullet entry wounds into the chest. The pre-autopsy photographs

were admissible to show the nature and extent of Merrell's wounds, the manner in which he died, as well as the means used to conceal his death. *Jenkins v. State*, 269 Ga. 282 (20) (498 SE2d 502) (1998); *Ottis v. State*, 269 Ga. 151 (4) (496 SE2d 264) (1998); *Russell v. State*, 267 Ga. 865 (3) (485 SE2d 717) (1997). The photographs were not duplicative and inadmissible merely because an expert witness also testified to the condition of the body. *Berry v. State*, 248 Ga. 430 (283 SE2d 607) (1981). Nor were they unduly gruesome or nonessential to the State's case. Compare *Brown v. State*, 260 Ga. 153 (391 SE2d 108) (1990) (Fletcher, J., dissenting).

(b) Kelly submits that the court erred in admitting evidence of Kelly's threats to kill his paramour, estranged wife, co-defendant Marlow and his family, and various strangers, which occurred close in time to Merrell's death.[3] He asserts that the evidence was highly prejudicial, irrelevant, and tended to confuse the issues at trial. At a pretrial hearing on the motion in limine, the State proffered the theory that Kelly threatened to kill various people to demonstrate to his wife that he would also kill her if she refused to return to him, and he in fact murdered Merrell to substantiate that threat.

In *Hodges v. State*, 265 Ga. 870 (3) (463 SE2d 16) (1995), we determined that a statement by the defendant concerning the manner in which he would kill if he were a "hit man," was relevant to show course of conduct or bent of mind. See also *Kellam v. State*, 260 Ga. 464 (3) (396 SE2d 894) (1990) (statements that the defendant had threatened and boasted of killing other victims admissible to show his state of mind); *Barnes v. State*, 245 Ga. 609, 610 (2) (266 SE2d 212) (1980) (evidence that the defendant "had killed once and didn't mind killing again" was relevant to issues of motive, intent, and scheme). Likewise, we conclude that the trial court properly allowed evidence of Kelly's contemporaneous threats to kill others as relevant to motive, state of mind, and intent.

(c) In this case, evidence of the items found in Kelly's possession at the time of his arrest after fleeing from police was admissible for whatever value the jury decides to place on them as part of the circumstances connected with Kelly's arrest. See *Cargill v. State*, 255 Ga. 616 (25) (340 SE2d 891) (1986).

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., who concurs in the judgment and in Divisions 1, 2, 3, 4 (a) and (b).*

---

[3] The court reserved ruling on the admissibility of testimony concerning threats on Marlow's life and family members until such time as the evidence was offered at trial. Since no further objection or proffer was asserted during trial, Kelly has waived error as to evidence of threats directed against Marlow.

DECIDED JANUARY 19, 1999 —
RECONSIDERATION DENIED FEBRUARY 19, 1999.

*Avrett, Ponder & Withrock, William B. Barnwell, Jerry W. Moncus,* for appellant.

*Kermit N. McManus, District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Frank A. Ilardi, Assistant Attorney General,* for appellee.