A05A1689. KING v. THE STATE.
(626 SE2d 161)

BERNES, Judge.
    A Lincoln County jury found William Terry King guilty of forgery in the first degree. King appeals from the denial of his amended motion for new trial, contending that the trial court erred by denying his motion for directed verdict of acquittal. He claims that the only evidence against him was the uncorroborated testimony of an accomplice to the crime. For the reasons set forth below, we affirm.

        The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. We view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Citations and footnotes omitted.) *Armour v. State*, 265 Ga. App. 569, 569-570 (1) (594 SE2d 765) (2004).
    Viewed in this light, the evidence reflects that at the time of the events at issue, John Kane was in his late 70s and had suffered several strokes. Kane, a widower, lived alone. Appellant was a close friend and neighbor of Kane who would drive him to appointments, take him out for meals, regularly get his mail for him, and do odd jobs

around his home. Appellant also knew where Kane stored his blank checks. One time in the past, when Kane told appellant where he had hidden some of his money, the money went missing.

In early 2000, Kane received a bank statement and realized that $10,000 was missing from his bank account. He contacted the bank, which presented him with a copy of a canceled check from his account that was made out to Mark Munns for $10,000 and that purportedly contained his signature as payor. After viewing a copy of the canceled check, Kane informed the bank that he had not authorized the check, that he had not filled out any part of it, and that the signature on the check was not his own. Kane would have caught the problem in his account sooner, but he had never received a bank statement with the canceled check enclosed, and the check had been written out of sequence.

Mark Munns, the purported payee on the check, was a neighbor of Kane. Kane had met Munns on one occasion, and to his knowledge Munns had never been in his home. In contrast, Munns and appellant were friends who had known each other for several years.

Prior to when the check was written, Munns and appellant had discussed the fact that they were both having financial problems. Munns told appellant that he needed a $1,000 loan so that he could pay his bills, and appellant told Munns that he needed a $9,000 loan so that he could purchase a vehicle. Appellant suggested that the money could be borrowed from Kane, and Munns agreed to that arrangement.

Appellant had Munns pick up the funds at Kane's home on a day that appellant was preparing Kane breakfast. When Munns arrived, appellant met him at the carport door and handed him a check that already had been made out to Munns for $10,000. Munns assumed that the check for the entire $10,000 had been written out to him because appellant was caring for Kane that morning and could not himself go to the bank. Munns never spoke with Kane about the purported loan or the check.

Munns went to the bank without appellant and cashed the check. He kept $1,000 to pay his own bills and gave $9,000 directly to appellant. Appellant told Munns that the $9,000 loan he had received from Kane was his business and that he did not want anyone else to know about it. Appellant also instructed Munns to pay back his $1,000 loan directly to appellant, with the promise that appellant would himself pay back the entire $10,000 to Kane. Shortly after giving the $9,000 to appellant, Munns saw appellant driving a new vehicle.

Once Kane discovered that he was missing $10,000 and identified the forged check to the bank, the bank manager contacted Munns. Munns then contacted appellant, who told Munns not to

contact Kane because he "would straighten it out" with Kane himself. Appellant became increasingly worried, suggested that Munns leave town until he could "take care of it" with Kane, and told Munns that he wanted to meet with him alone in the woods. Munns agreed to meet with appellant on more than one occasion and spoke with him several times on the phone about the bank situation, repeatedly asking appellant to speak with Kane about what had happened. During one such meeting, appellant "was nervous" and told Munns that they had been "caught." Also, appellant pointed to a burnt pile of debris in his backyard and told Munns that he "took care of" the original canceled check.

Munns and appellant subsequently were arrested and indicted for forgery in the first degree under OCGA § 16-9-1.[1] Appellant pled not guilty and stood trial, and the State called Kane and Munns, among others, as witnesses. Appellant did not call any witnesses on his own behalf. The jury convicted appellant of the charged offense.

Based on the evidence presented at trial, a directed verdict of acquittal was not required. "A person commits the offense of forgery in the first degree when with intent to defraud he knowingly makes, alters, or possesses any writing . . . in such manner that the writing as made or altered purports to have been made . . . by authority of one who did not give such authority and utters or delivers such writing." OCGA § 16-9-1 (a). See *Jordan v. State*, 242 Ga. App. 547, 548 (1) (a) (528 SE2d 858) (2000); *McBride v. State*, 202 Ga. App. 556, 557 (415 SE2d 13) (1992). Kane testified that the $10,000 check was unauthorized, that he had not written out any part of it, and that it contained a false signature, and he further testified that appellant knew where he kept his blank checks. In turn, Munns testified that he had received the check already written out to him from appellant, and he described appellant's suspicious comments and actions following the bank's discovery of the forged check. Based on the combined testimony of Kane and Munns, a rational jury was entitled to conclude beyond a reasonable doubt that it was appellant who forged the check on Kane's account. See *Jordan*, 242 Ga. App. at 549 (1) (a) (testimony from victim that checks were unauthorized, combined with testimony that "[e]ach check left defendant's possession to be negotiated and honored by [the victim's] bank," was sufficient to show that defendant forged the checks); *Jenkins v. State*, 217 Ga. App. 655, 656 (2) (458

---

[1] Another party was indicted along with Munns and appellant for forgery in the first degree, but the charges against him were not pursued by the State, he did not testify at appellant's trial, and the record does not fully reflect what role he may have played in the crime. Thus, we have omitted any further reference to this co-indicted party from our opinion.

SE2d 497) (1995) (noting that "conduct before and after the offense are circumstances from which one's participation in the [crime] may be inferred").

Furthermore, although the testimony showed that it was Munns who presented the forged check to the bank for cashing, "one may be guilty of forgery in the first degree as a party to the crime if there is some connection between the accused and the uttering." *Jenkins*, 217 Ga. App. at 656 (2).[2] Here, the trial court instructed the jury on the principle of parties to a crime, under which a defendant may be convicted if, inter alia, he "[i]ntentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime . . . in fact," or if he "[i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime." OCGA § 16-2-20 (b) (2), (4). Based on the testimony of Kane and Munns, the jury was entitled to conclude that the forged check was presented to the bank for cashing at appellant's behest, and, therefore, that the State had proven the "uttering" element of first degree forgery beyond a reasonable doubt. See *Jenkins*, 217 Ga. App. at 656 (2); *McGowan v. State*, 173 Ga. App. 438, 440 (5) (326 SE2d 805) (1985).

Nevertheless, appellant contends that a directed verdict of acquittal was required because the State purportedly failed to present corroborating evidence of his participation in the crime in violation of OCGA § 24-4-8. That statute requires that "in order to sustain a felony conviction based upon the testimony of an accomplice, there must be independent corroborating evidence which connects the accused to the crime." *Edmond v. State*, 267 Ga. 285, 287 (2) (476 SE2d 731) (1996), citing OCGA § 24-4-8. Appellant contends that the requirement imposed by OCGA § 24-4-8 was not met because the only evidence purportedly presented by the State showing his participation in the crime was the uncorroborated testimony of Munns, who was jointly indicted with appellant. We find appellant's argument unpersuasive. The corroboration requirement is not triggered simply by the fact that a witness in a criminal trial was jointly indicted with the defendant. See *Davis v. State*, 122 Ga. 564 (50 SE 376) (1905). So long as the question of whether the witness was an accomplice was submitted to the jury and the jury was properly instructed on the corroboration requirement imposed by OCGA § 24-4-8, we will not find that corroboration was required as a matter of law, if there was evidence from which the jury was authorized to conclude that the

---

[2] " 'Uttering' or 'delivering' a forged instrument is the distinguishing factor between forgery in the first degree and forgery in the second degree. Compare OCGA § 16-9-1 (a) with OCGA § 16-9-2 (a)." *Jenkins*, 217 Ga. App. at 656 (2).

witness was *not* an accomplice. *Kelly v. State*, 270 Ga. 523, 525 (2) (511 SE2d 169) (1999). Similarly, corroboration is not required if there is a total lack of evidence in the record that the witness at issue was an accomplice. *Christian v. State*, 277 Ga. 775, 776 (1) (596 SE2d 6) (2004). The trial court properly charged the jury on the corroboration requirement imposed by OCGA § 24-4-8 and further charged the jury that "[w]hether or not any witness in this case was an accomplice is a question for you, the jury, to determine from the evidence in the case." And, there was evidence of record from which the jury could have concluded that Munns was not appellant's accomplice. "Criminal intent . . . is a necessary ingredient of crime and is essential to render one an accomplice." (Citation and punctuation omitted.) *Johnson v. State*, 153 Ga. App. 771, 772 (1) (266 SE2d 551) (1980). Based on Munns' testimony, the jury could have concluded that he lacked the requisite criminal intent because he was duped by appellant into presenting the forged check to the bank and cashing it based on his mistaken belief that Kane had actually made out the check as a loan for appellant and himself. Under these circumstances, "the jury was authorized to conclude that [Munns] was not an accomplice, [and so] corroboration was not required." *Kelly*, 270 Ga. at 525 (2).

In any event, although a very close question, the State presented sufficient corroboration evidence. Under Georgia law,

> the corroborating evidence need not of itself be sufficient to warrant a conviction of the crime charged. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict. The corroborating evidence may be circumstantial. The sufficiency of corroborating evidence should be peculiarly a matter for the jury to determine.

(Citations and punctuation omitted.) *Givens v. State*, 227 Ga. App. 861, 862 (490 SE2d 530) (1997).

Munns testified that appellant needed the $9,000 from Kane in order to purchase a vehicle and that shortly after he gave the money to appellant, he saw appellant driving around in a new vehicle. Kane testified that shortly after the crime occurred, he saw appellant driving a new vehicle. Additionally, Munns testified that appellant indicated that he had intercepted and destroyed the canceled check, and Kane confirmed that appellant routinely got his mail during this period and that he never received a bank statement containing the canceled check. Finally, Kane testified that appellant knew specifically where his blank checks were kept, and that when he had told appellant where he had hidden money in the past, the money went

missing. Kane's testimony constituted sufficient corroboration to send the matter to the jury. See generally *Givens*, 227 Ga. App. at 862; *Quaid v. State*, 132 Ga. App. 478, 483 (1) (208 SE2d 336) (1974).

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED JANUARY 10, 2006.

*M. V. Booker*, for appellant.

*Dennis C. Sanders, District Attorney, Rindi L. Harberson, Sarah M. Peacock, Assistant District Attorneys*, for appellee.