In the Supreme Court of Georgia

Decided: October 6, 2014

S14A0597. MILLER v. THE STATE.

BENHAM, Justice.

Appellant Gregory Dwayne Miller appeals his convictions for the murder of Melissa Rushing and the concealment of her death.[1]  Construed in the light most favorable to the verdict, the evidence shows the victim was living at appellant's apartment in Macon at the time she was killed.  On the evening of August 6, 2008, appellant, along with the victim and one of appellant's friends, Joseph Meredith, went to Wal-Mart.  As they were loading groceries in the car to return home, appellant reacted angrily to the way the victim was loading the car and knocked a pizza out of the way.  After they returned to appellant's

---

[1]  The crimes occurred in the late hours of August 6, 2008, or the early hours of August 7, 2008.  On November 3, 2009, a Bibb County grand jury returned an indictment charging appellant with malice murder, felony murder (aggravated assault), and concealment of a death.  Appellant was tried December 6-9, 2010, and a jury found him guilty on all counts.  Given the malice murder conviction, the felony murder conviction was vacated as a matter of law, and the trial court sentenced appellant to life in prison, plus ten years to serve consecutively for the conviction for concealment of a death.  Appellant moved for new trial on December 10, 2010, which was amended February 26, 2013.  After two hearings, the trial court denied appellant's motion for new trial by order filed October 14, 2013.  Appellant filed a timely notice of appeal on October 24, 2013, and the case was docketed in this Court to the April 2014 term for a decision to be made on the briefs.

apartment, the victim invited a man she had previously dated to the apartment for the purpose of meeting appellant so appellant could talk to him about procuring drugs, but that man testified he was unable to do what appellant was asking him to do. He spoke to the victim by phone around 11:00 p.m. as he was leaving the apartment complex and she seemed to be fine at that time.

Later in the evening, appellant was at the apartment with the victim, Meredith, Jermaine Williams, and Alphonso English. Appellant began arguing with the victim about the man she had invited over. He got into a physical scuffle with the victim, hit her with his hand, and hit her in the head with a plate so hard that the plate broke. When the victim fell onto the couch upon being hit with the plate, appellant told her to be quiet or he would "whoop her ass." When English tried to get appellant to stop hitting the victim, appellant cursed English and told him to leave. Appellant picked up a metal rod door-stop apparently to hit the victim, but Meredith took it out of his hand. At some point, appellant retrieved a rifle from another room and pointed it at the victim. Appellant and the victim went into the room appellant called his office and Williams joined appellant there to smoke marijuana laced with crack cocaine. Williams came back into the living room, leaving appellant and the victim in the

2

office together.  At some point, appellant was seen coming out of the office with blood on his hands and holding a knife.  Meredith saw the victim in the office with her throat cut and gasping for air "like she was drowning."

Appellant forced Meredith to obtain bleach and pour it over appellant's hands, and appellant took a shower.  Appellant then wrapped the victim up in a shower curtain and called his friend Tommy Zellner, who came over.  Appellant told Williams, Meredith, and Zellner "what he had done," that "he had to get rid of her," and threatened them and their families if they did not help him dispose of the body.  Williams helped appellant move the body downstairs and into the back seat of Zellner's car.  Appellant sent Meredith off to fill appellant's car, along with a plastic jug, with gasoline, and the two cars were to meet up.  After getting the gasoline, Meredith started driving away from the station but had to pull over and walk because the car broke down.  Appellant obtained the jug of gasoline, himself.  Using Zellner's car, Williams, Zellner, and appellant drove the body to a secluded location in Bibb County, pulled the body from the car, and then appellant poured gasoline over it and set it on fire.  All three men then drove to Atlanta and appellant did not return to Macon until the next day.

In response to a 911 call reporting a fire on the side of the road, the victim's body was discovered while it was still engulfed in flames. The authorities testified a cord had been wrapped around the victim's neck which then ran down her back to her feet, which were also bound together. Forensic evidence showed there were remnants of melted plastic on the body's head and neck held by what appeared to be an extension cord. Investigators observed blunt force trauma to the face that was inconsistent with damage due to the fire. They determined the body had been doused with a flammable liquid. Appellant's sister heard news on the television that a body with tattoos similar to the victim's had been found beside a road, and this prompted the sister to visit appellant's apartment. There she observed he had been cleaning and noticed the strong smell of bleach. She also noticed a piece of carpet had been cut out of the office floor, and when his sister questioned him, appellant told her he had spilled some ink on the carpet.

On August 11, 2008, investigators and crime scene technicians inspected appellant's apartment and noted that the victim's clothes had been stacked as if they were being packed away. They found cleaning items, including bleach, in the kitchen and a broken plate in the trash. The carpet in the office appeared to

4

have been recently cut. Investigators found a utility knife in the office with a missing blade. They collected a number of samples they believed to be blood but none of the samples were a match for the victim's blood. The cause of death was deemed to be a combination of blunt force head trauma, smothering, and strangulation. The investigation led authorities to Meredith and Williams, but only after appellant was arrested did these witnesses disclose to the investigators all that had transpired.

1. Appellant asserts that, but for his statement to the police, the evidence was vague, ambiguous, and conflicting, at best, and that the only two other major witnesses, Meredith and Williams, admitted to at least participating in the concealing of a death, perjury in sworn statements to police, and obstruction of law enforcement. Consequently, appellant contends the evidence was insufficient to support a conviction pursuant to the standard set forth in *Jackson v. Virginia*, 442 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Resolving evidentiary conflicts and inconsistencies, however, as well as assessing witness credibility, are the province of the fact finder, not this Court. *Hampton v. State*, 272 Ga. 284, 285 (1) (527 SE2d 872) (2000). Further, when reviewing the sufficiency of the evidence, this Court considers the evidence in the light most

5

favorable to the verdict.  See *Barge v. State*, 294 Ga. 567, 568 (1) (755 SE2d 166) (2014).

The trial court instructed the jury that the testimony of an accomplice, alone, is not sufficient to warrant a conviction, and also that whether a witness in the case was an accomplice is an issue for jury determination.  From the evidence, the jury was entitled to find these witnesses were not accomplices in the concealment of the victim's death or any other criminal acts but were coerced by fear of harm or death to do appellant's bidding with respect to disposing of the body.  See *Kelly v. State*, 270 Ga. 523, 525 (2) (511 SE2d 169) (1999).  Consequently, this is not a case in which the evidence of that crime consisted solely of the uncorroborated testimony of accomplices and was therefor insufficient to convict.  Id.  In any event, accomplices can corroborate each other.  See *Jones v. State*, 235 Ga. 103 (3) (218 SE2d 899) (1975); *Skipper v. State*, 314 Ga. App. 870, 872 (726 SE2d 127) (2012).  Pursuant to the standard set forth in *Jackson v. Virginia*, supra, the evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted.

2. Appellant asserts his appointed trial counsel provided constitutionally ineffective assistance of counsel for several reasons and that he is thus entitled to a new trial. For the reasons discussed below, we find that appellant's assertions of error cannot be sustained because they do not meet both prongs of the test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).[2]

(a) (i) With respect to trial preparation and the calling of witnesses, appellant complains that his trial counsel failed to use any of the witnesses he identified to counsel, that counsel rarely met with him, and would not listen to his concerns about his defense. At the motion for new trial hearing, however, appellant's trial counsel testified that he met with appellant a number of times, provided appellant with information gathered during discovery, and that he investigated witnesses identified by appellant but concluded none of them would be helpful to the case and one would have been harmful to call. "A strong presumption exists that counsel's conduct falls within the broad range of professional conduct. . . . [T]he trial court was entitled to believe counsel's

---

[2] "To prevail on a claim of ineffective assistance of counsel, an appellant must prove both deficient performance of counsel and prejudice from the deficient performance." *Bell v. State*, 294 Ga. 443, 445 (754 SE2d 327) (2014) (citing *Strickland v. Washington*, supra.)

7

testimony he consulted with his client over appellant's testimony that he did not[.]" *Coggins v. State*, 275 Ga. 479, 481-482 (3) (569 SE2d 505) (2002).

Further, appellant presented no evidence whatsoever regarding the identity of the witnesses he claims should have been called or what their testimony would have been. Deciding which witnesses to call is a matter of trial strategy and tactics, and because appellant failed to show that the strategic decisions made by his counsel with respect to witnesses were so patently unreasonable that no competent attorney would have chosen them, the trial court did not err in finding trial counsel's performance in this regard was not constitutionally deficient. See *Washington v. State*, 294 Ga. 560, 565-566 (3) (755 SE2d 160) (2014).

(ii) One of appellant's complaints regarding counsel's failure to call witnesses relates to his assertion that counsel wrongly failed to present the testimony of a DNA expert. Appellant, however, has failed to demonstrate how trial counsel's failure to present the testimony of a DNA expert created prejudice pursuant to the two-pronged test set forth in *Strickland* because the State's witnesses established the absence of the victim's blood at appellant's apartment. Counsel is not ineffective for failing to call an expert witness whose testimony

would have been cumulative of other evidence presented in the trial. See *Bryant v. State*, 293 Ga. 754 (2) (749 SE2d 697) (2013); *Wesley v. State*, 286 Ga. 355 (3) (h) (689 SE2d 280) (2010).

(b) Appellant also asserts his counsel provided ineffective assistance when he failed to withdraw from representing him, so that new counsel could be appointed, when an ethical conflict of interest arose which caused counsel to present appellant's testimony in a narrative format as opposed to questioning him. When appellant elected to take the stand, trial counsel informed the court outside the presence of the jury that an ethical issue prevented him from questioning appellant. An ex parte hearing was conducted, and when asked, trial counsel disclosed that the ethical issue was the potential violation of Rule 3.3 of the Georgia Rules of Professional Conduct. That rule prohibits a lawyer from offering evidence the lawyer knows to be false.[3] Counsel also confirmed that he had explained to appellant the requirement for a witness to testify truthfully and that he had counseled appellant against taking the stand. After a break in the proceedings during which appellant's trial counsel consulted with

---

[3] Rule 3.3 (a) (4) states that "[a] lawyer shall not knowingly . . . offer evidence that the lawyer knows to be false." Subsection (c) further provides that "[a] lawyer may refuse to offer evidence that the lawyer reasonably believes is false."

9

legal counsel about the matter, counsel reported back to the trial court that he believed the only way to resolve the ethical dilemma was to permit appellant to testify in the narrative. The trial court, again during an ex parte hearing, explained to appellant that given counsel's ethical concerns, if appellant elected to testify, his counsel would ask certain preliminary questions and then he would be permitted to testify in the narrative. The trial court further explained the procedure that would be followed if his testimony was presented to the jury in narrative form without the benefit of questioning by his counsel. Appellant elected to testify and his testimony was presented in this fashion.

Appellant now asserts that when the trial court permitted him to testify in the narrative, this effectively permitted his trial counsel to withdraw from representing him, leaving him without counsel, thus establishing constitutionally ineffective assistance of counsel. He further asserts that pursuant to Rule 1.7 of the Georgia Rules of Professional Conduct, when an attorney determines that his duty to a third party, such as the court, is in conflict with his duty to represent the client, the attorney shall not continue to represent the client.[4] Appellant

_____

[4] Rule 1.7 (a) of the Georgia Rules of Professional Conduct provides, in pertinent part:

A lawyer shall not represent or continue to represent a client if there is a significant

argues that immediate withdrawal was the only appropriate action for trial counsel so that a mistrial could be granted and new counsel appointed to represent him at a new trial.

Because counsel is precluded from assisting the client in presenting false evidence, ineffective assistance of counsel is not shown by trial counsel's taking steps to avoid violating this ethical duty. See *Nix v. Whiteside*, 475 U.S. 157, 168-171 (II) (C) (106 SCt 988, 89 LE2d 123) (1986). Although other options for avoiding violating this duty exist, courts that have examined the issue have overwhelmingly endorsed the option of permitting a criminal defendant to testify in the narrative, after counsel has attempted to dissuade the defendant from perjury. See *Foster v. Smith*, 2014 WL 1230551 *14 (W.D. Mich.) (March 25, 2014) and cases cited therein.

> The only clearly established Supreme Court law in this area is established by *Nix*: defense counsel does not act ineffectively for refusing to present known or suspected perjury by the client. Beyond that, the Court has not prescribed clear guidelines.

Id. at *15.

---

risk that the lawyer's own interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client . . . .

Trial counsel testified at the motion for new trial hearing that he believed the only way to resolve the conflict that arose between his duty to the client and his duty to the court was to permit appellant to testify in the narrative because he did not think that asking to withdraw as counsel was an option at that point in the trial. Appellant has not established that the trial court would have permitted counsel to withdraw mid-trial and then granted a mistrial so that he could be represented by newly appointed counsel at a new trial. In fact, appellant submitted his pro se written request for appointment of new counsel directly to the trial judge, who denied that motion. We agree with the conclusion of the trial court in its order denying a new trial that even assuming a motion for mistrial would have been granted and new trial counsel appointed, such an approach would likely have begun an endless cycle of continuances and motions to withdraw by newly appointed counsel, or else may have encouraged appellant to keep his intent to commit perjury to himself, thus facilitating false testimony at trial. See *People v. Johnson*, 62 Cal. App. 4th 608, 623 (3) (72 Cal. Rptr. 2d 805) (1998).

Further, with respect to the assertion that trial counsel was faced with a conflict of interest that required him to withdraw, we note that "[i]n every case,

an attorney's loyalty to the client is tempered by the rules of professional responsibility. That divided loyalty, however, is not the type of conflict of interest that rises to the presumption of a prejudice." *State v. McDowell*, 272 Wis. 2d 488, ¶ 61 (681 NW2d 500) (2004). Even assuming, without deciding, that trial counsel should have sought leave to withdraw and a mistrial prior to presenting his testimony in a narrative format, appellant failed to establish prejudice by that failure. "[A]t a minimum the attorney's first duty when confronted with a proposal for perjurious testimony is to attempt to dissuade the client from the unlawful course of conduct." *Nix*, supra, 475 U.S. at 169.[5] The record reflects this duty was met. Because appellant has failed to meet the prejudice prong of the *Strickland* test, he has failed to establish ineffective assistance of counsel with respect to trial counsel's election to present

---

[5] See also Comment (6) of Rule 3.3 of the Georgia Rules of Professional Conduct:

If a lawyer knows that the client intends to testify falsely or wants the lawyer to introduce false evidence, the lawyer should seek to persuade the client that the evidence should not be offered. If the persuasion is ineffective and the lawyer continues to represent the client, the lawyer may refuse to offer the false evidence. If only a portion of a witness's testimony will be false, the lawyer may call the witness to testify but may not elicit from the witness the testimony that the lawyer knows is false.

appellant's testimony in narrative form, given the circumstances present in this case.

3. (a) Both Williams and Meredith referred in their testimony to appellant's incarceration in the context of explaining why they initially failed to make truthful statements to investigators, stating that they felt safer speaking to the authorities once they knew appellant was in jail. Even though no objection was raised to this testimony, appellant asserts this testimony improperly placed his character into evidence and the trial court erred by failing to act sua sponte to give curative instructions. In support of his assertion that curative instructions were required, appellant cites to cases in which this Court has found no error in the trial court's failure to grant a motion for mistrial where the trial court otherwise gave curative instructions. See *Culler v. State*, 277 Ga. 717 (3) (594 SE2d 631) (2004); *Carruthers v. State*, 272 Ga. 306 (8) (528 SE2d 217) (2000), rev'd on other grounds, *Vergara v. State*, 283 Ga. 175, 177 (1) (657 SE2d 863) (2008). In those cases, however, the court's remedial instructions were given in response to an objection raised by the defendant. When no objection to testimony is raised at trial, the issue is waived and the error, if any, is not preserved for appeal. See *Martin v. State*, 281 Ga. 778, 779-

14

790 (2) (642 SE2d 837) (2007). Further, no reversible error was created by the trial court's failure, sua sponte, to give a curative instruction to this testimony. Failure to give an unrequested curative instruction does not create reversible error. See *Hamilton v. State*, 274 Ga. 582, 584 (4) (555 SE2d 701) (2001) (holding that even where an objection is raised, no reversible error is created by the trial court's failure to give an unrequested curative instruction or other remedial relief). Finally, appellant failed to demonstrate he was harmed by the trial court's failure to issue, sua sponte, curative instructions in response to the witnesses' references to appellant's incarceration. "[A] passing reference to a defendant's record does not place his character in evidence." *Johnson v. State*, 256 Ga. 604 (2) (351 SE2d 623) (1987). Likewise, passing references to appellant's incarceration did not place his character into evidence, particularly since a jury could reasonably assume that a defendant charged with murder would be arrested for the crime.

(b) In the course of describing the events of the night in question and the appellant's words and actions, Williams testified about how appellant revealed to him and Meredith what had happened and what he demanded they do to assist him. Williams stated that appellant declared "this wasn't his first . . . ." Before

he could finish the sentence, appellant's counsel objected. Pursuant to a discussion outside the presence of the jury, appellant's counsel moved for mistrial, which was denied. Instead, the trial court instructed the jury to disregard the witness's last sentence, which was incomplete, and instructed them not to speculate as to what the witness was about to say or what he meant. Appellant's renewed motion for mistrial was denied. We reject appellant's assertion that the trial court erred by denying his motion for mistrial as a result of this testimony because the testimony improperly referenced prior bad acts by the appellant and thus improperly placed his character into evidence. We agree with the trial court's conclusion that even if the jury assumed the witness was about to testify that appellant said "this was not his first rodeo," the jury had no way to know what was intended by such a statement as they had no knowledge of the appellant's prior criminal record.

"Whether to grant a mistrial based on improper character evidence is within the discretion of the trial court. [Cit.] We have held that curative instructions are an adequate remedy when a witness inadvertently refers to a defendant's prior convictions or criminal acts." *Bunnell v. State*, 292 Ga. 253, 257 (4) (735 SE2d 281) (2013). In this case, the incomplete sentence uttered by

the witness was not in response to an improper question about prior acts. Further, the witness did not actually testify to any prior criminal acts by the appellant or to any admission of such acts by the appellant. Curative instructions were given. Consequently, the trial court did not commit reversible error by denying appellant's motion for mistrial.

4. Whether the trial court erred in denying appellant's motion to exclude his custodial statement to police on the ground that it was not voluntarily made under the totality of the circumstances is moot since the statement was never entered into evidence. Accord *Lawler v. State*, 276 Ga. 229, 233 (4) (d) (576 SE2d 841) (2003) (holding the argument that the police improperly seized legally privileged documents was moot when no such documents were admitted at trial). The record reflects that appellant even withdrew his request to charge on the voluntariness of the custodial statement, acknowledging the charge was unnecessary since counsel did not recall the State asking about that statement.

Judgment affirmed. All the Justices concur.