309 Ga. 452
FINAL COPY

S20A0633, S20X0634.  THE STATE v. GRIER; and vice versa.

BLACKWELL, Justice.

In 2010, Quantavious Grier was tried by a Fulton County jury and convicted of felony murder and other crimes in connection with the robbery and fatal shooting of James Yarborough.[1] Grier filed a motion for new trial, and in 2019, the trial court granted his motion "as a matter of law and facts, sitting as the thirteenth juror." In support of its ruling, the trial court found that the case against Grier was based substantially upon the testimony of Rimion Rawlings,

---

[1] The crimes were committed in December 2007. A Fulton County grand jury indicted Grier in June 2010, charging him with two counts of felony murder, two counts of armed robbery, two counts of aggravated assault with a deadly weapon, one count of possession of a firearm during the commission of a felony, and one count of possession of a firearm by a first offender probationer. Grier was tried alone in December 2010, and the jury found him guilty on all counts. The trial court sentenced Grier to imprisonment for life plus a term of years. Grier filed his motion for new trial in 2010, and he filed an amended motion for new trial in 2016. After several hearings, the trial court granted the motion for new trial in March 2019. The State appealed, and Grier cross-appealed. The appeals were docketed to the April 2020 term and submitted for decision on the briefs.

that the greater weight of the evidence indicated that Rawlings was Grier's accomplice, and that Rawlings's testimony was insufficiently corroborated by independent evidence. The State appeals, contending that the trial court abused its discretion when it granted the motion for new trial. Grier cross-appeals, arguing that the trial court also should have concluded that the evidence presented at trial was legally insufficient to sustain his convictions. Upon our review of the record and the briefs, we find no merit in either of these claims, and we affirm.

1. The State argues that the trial court abused its discretion when it granted the motion for new trial because Rawlings was not an accomplice, and even if he were, his testimony was sufficiently corroborated. We disagree that the trial court abused its discretion.

"In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury." OCGA § 5-5-20. In addition, "[t]he presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be

decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding." OCGA § 5-5-21. The grounds set forth in these statutes "are commonly known as the 'general grounds' for new trial." State v. Holmes, 306 Ga. 647, 649 n.1 (832 SE2d 777) (2019) (citation and punctuation omitted). When the general grounds are properly raised in a timely motion, the trial judge is required "to exercise a broad discretion to sit as a 'thirteenth juror.'" State v. Hamilton, 306 Ga. 678, 684 (2) (832 SE2d 836) (2019) (citation and punctuation omitted). "'In exercising that discretion, the trial judge must consider some of the things that (he) cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence,'" meaning that the trial judge may grant a new trial on the general grounds "'(e)ven when the evidence is legally sufficient to sustain a conviction.'" Id. (quoting White v. State, 293 Ga. 523, 524 (2) (753 SE2d 115) (2013)); see also Holmes, 306 Ga. at 649 n.1. This discretion is not boundless — it "should be exercised with caution

and invoked only in exceptional cases in which the evidence preponderates heavily against the verdict" but "it nevertheless is, generally speaking, a substantial discretion." Hamilton, 306 Ga. at 684 (2) (citation and punctuation omitted). We review the first grant of a motion for new trial on the general grounds only for an abuse of discretion. See OCGA § 5-5-50.

With these guiding principles in mind, we turn to the facts of this case. The evidence shows that, on the evening of December 21, 2007, Yarborough and his nephew, Kenneth Kaiser, were walking to a check-cashing store with a check for roughly $1,500. Along the way, they encountered Darius Jordan and Rawlings, who offered them a ride. Jordan and Rawlings were strangers to Yarborough and Kaiser, but they were friends with Grier. In fact, Jordan was driving a Honda that he had borrowed from Grier's mother. Jordan drove Yarborough and Kaiser to the store, where Yarborough cashed his check and returned to the Honda.

Yarborough purchased crack cocaine and marijuana from Jordan and kept the remainder of the money. The men purchased

drug paraphernalia, and Yarborough then smoked crack cocaine inside the vehicle while Jordan drove around. Jordan made at least one stop while driving, and he ultimately circled twice around the block of the neighborhood on which Grier's mother lived, and where Grier lived on and off. During this time, Jordan was talking on his cell phone with someone. Eventually, Jordan parked the car, and Rawlings exited the Honda. At that time, a man dressed in black approached the vehicle. The man greeted Jordan and then ordered Yarborough and Kaiser at gunpoint to get "the f*** out" of the vehicle. The man ordered Yarborough and Kaiser to hand over their drugs and money, which they did. Then, the man ordered them to walk away from the vehicle. Kaiser began to do so, but Yarborough threw his jacket at the gunman. The man fired his weapon, fatally wounding Yarborough. Rawlings, Jordan, and the gunman got into the Honda and sped off. Kaiser described the gunman as a young, light-skinned black man with no facial hair and a buzz haircut — a description that Grier fit. Although the State later indicted Grier as the shooter, Kaiser did not identify him in a lineup. He did, however,

identify both Jordan and Rawlings.

Also at trial, the State presented Rawlings as a witness. Rawlings testified, but only after the State granted him immunity from prosecution. He testified that he was riding in a black Honda with Jordan when they picked up Yarborough and Kaiser. After the men cashed a check, he and Jordan sold them drugs and helped them obtain drug paraphernalia with which to consume the drugs. Rawlings testified that Jordan eventually drove them around the block near Grier's mother's house and stopped the car. Rawlings confirmed that Grier approached the vehicle and ordered Yarborough and Kaiser out at gunpoint. During that time, Rawlings walked to the rear of the car because he "wouldn't have nothing to do with" the robbery. He testified that he then saw Grier shoot Yarborough. Following this, Rawlings jumped in the vehicle with Jordan and Grier and rode off. Jordan and Grier gave him $50 and told him not to tell anybody about what had happened. He later identified Jordan and Grier to police investigators.

The State introduced cell phone records to show that, just

before the shooting, Jordan had been talking on his cell phone with someone using a cell phone that customarily was used by Grier's older brother. But the older brother — who is deaf and used his phone exclusively for text messaging and purposes other than audible communications — testified at trial that he was asleep at his mother's house at the time of the incident and had no knowledge of the robbery and murder. The older brother also testified that, on the night of the shooting, his phone was on the couch next to him while he was asleep.

In closing argument, Grier's lawyer said that the most important instruction given to the jury was the charge on accomplice testimony, arguing that there was no evidence to corroborate Rawlings's testimony identifying Grier as the shooter. The State, in response, argued that Rawlings was not an accomplice, and so the prosecution did not need to corroborate his testimony. The jury asked during its deliberations for a definition of an accomplice. After it was charged on the definition of an accomplice, the jury returned a verdict of guilty on all counts.

After conducting four hearings, the trial court granted Grier's motion for new trial in early 2019. The court observed that Rawlings admitted during cross-examination that he was a party to the crime of armed robbery, as he was with Yarborough before the armed robbery, was present for its planning, and had prior knowledge it was going to occur. He then was present when the armed robbery and shooting occurred, fled the scene with the co-conspirators, and received $50 to stay quiet about the robbery and murder. Furthermore, upon review of all the testimony presented at trial, the trial court concluded that Rawlings's accomplice testimony was insufficiently corroborated, so Grier was entitled to a new trial.

The trial court did not abuse its discretion in making this determination in its capacity as the thirteenth juror. Consistent with the jury instructions, the jury could have returned a guilty verdict after concluding either that Rawlings was not an accomplice (in which case, his testimony alone was enough to convict) or that Rawlings was an accomplice but his testimony was adequately corroborated. See OCGA § 24-14-8 ("The testimony of a single

witness is generally sufficient to establish a fact. However, in certain cases, including . . . felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness[.]"). See also Dozier v. State, 307 Ga. 583, 586 (837 SE2d 294) (2019) (noting that "sufficient corroborating evidence may be circumstantial, it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged," but it "must be independent of the accomplice testimony and must directly connect the defendant with the crime or lead to the inference that he is guilty") (citation and punctuation omitted). As we will discuss in the next division, there was some evidence from which the jury reasonably could have reached either conclusion. On the motion for new trial, however, the judge in his capacity as the thirteenth juror found that the weight of the evidence led to the conclusion that Rawlings was an accomplice, and the other evidence was not weighty enough to persuade the judge that the accomplice testimony had been corroborated. This determination

was within the judge's substantial discretion, see <u>Hamilton</u>, 306 Ga. at 684 (2), and because "the law and facts [do not] require the verdict notwithstanding the judgment of the presiding judge," OCGA § 5-5-50, we affirm the grant of the motion for new trial.

2. In his cross-appeal, Grier argues that the trial court, while correct in granting his motion on thirteenth juror grounds, also should have concluded that the evidence presented at trial was legally insufficient to support his convictions.[2] We disagree. As a matter of federal constitutional due process, see <u>Jackson v. Virginia</u>, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), the evidence — viewed in the light most favorable to the verdict of the jury — was sufficient to sustain the convictions, regardless of whether it showed Rawlings to be an accomplice. See <u>United States v. Milkintas</u>, 470 F3d 1339, 1344 (11th Cir. 2006) (noting that, in

---

[2] Our decision to affirm the grant of a new trial on the general grounds does not render the cross-appeal moot because, if the evidence presented at the original trial were legally insufficient to sustain a guilty verdict, principles of double jeopardy generally would preclude a retrial. See <u>State v. Caffee</u>, 291 Ga. 31, 34 (3) (728 SE2d 171) (2012) ("The Double Jeopardy clause precludes a second trial after a reviewing court determines that the evidence introduced at trial was insufficient to sustain the verdict.").

federal court, "uncorroborated testimony of an accomplice is sufficient to support a conviction if it is not on its face incredible or otherwise insubstantial"); <u>Llewellyn v. Stynchcombe</u>, 609 F2d 194, 196 (5th Cir. 1980) (noting that, although Georgia law requires independent corroboration of an accomplice's testimony to secure a conviction, federal law does not require such corroboration and, thus, a failure to corroborate accomplice testimony did not offend constitutional due process).

As for the sufficiency of the evidence under state law — specifically the requirement of OCGA § 24-14-8 that accomplice testimony be corroborated — we likewise conclude that the evidence presented at trial was legally sufficient to sustain the verdict. In the first place, the evidence authorized the jury to find that Rawlings was not an accomplice at all, notwithstanding that the trial judge in his capacity as a thirteenth juror found otherwise. And if the jury had found that Rawlings was not an accomplice, no corroboration of his testimony would have been necessary under OCGA § 24-14-8. Moreover, even if the jury had found that Rawlings was an

accomplice, there was some evidence that would have authorized the jury to find sufficient corroboration of his testimony, notwithstanding that the trial judge as the thirteenth juror found corroboration wanting.[3] See Robinson v. State, 303 Ga. 321, 323 (1) (812 SE2d 232) (2018) (noting that corroborating evidence may be "circumstantial" and "slight" but is sufficient if it "directly connects the defendant to the crime or leads to the inference of guilt"). That different finders of fact — the jury and the trial judge in his capacity as the thirteenth juror — may have seen the evidence differently and reached inconsistent conclusions does not mean that the evidence was legally insufficient to sustain either of their conclusions.

Judgment affirmed. All the Justices concur.

---

[3] In particular, the evidence that Jordan was talking just before the robbery and shooting to someone who was using the phone ordinarily used by Grier's brother, the evidence that Grier's brother was not the person with whom Jordan was talking, the evidence that Grier had access to his mother's home in which his brother and the phone were located at the time, the testimony that Jordan, just before the robbery, drove the car around the block where Grier's mother and brother lived, and Kaiser's description of the shooter that was consistent with Grier's appearance would tend to corroborate Rawlings's identification of Grier as the shooter.

DECIDED AUGUST 10, 2020.
Murder. Fulton Superior Court. Before Judge Newkirk.
*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Stephany J. Luttrell, Teri B. Walker, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellant.
*Brian Steel*, for appellee.