**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: May 3, 2022

S22A0229. CALDWELL v. THE STATE.

MCMILLIAN, Justice.

Willie Caldwell appeals his conviction for felony murder arising out of the shooting death of Ricardo McPherson.[1] On appeal, Caldwell asserts that the evidence presented at his trial was insufficient to sustain his conviction because a key witness was an

---

[1] McPherson was killed on September 15, 2008, and in July 2011, a Dougherty County grand jury indicted Caldwell, Theojuana McCullar, and Jatarious Bronner for one count of felony murder (Count 1) and one count of aggravated assault (Count 2). Caldwell was also indicted for another count of aggravated assault (Count 3). McCullar and Bronner are not parties to this appeal.

At a joint trial of all three co-indictees conducted from July 9 to July 18, 2018, a jury found Caldwell guilty of all counts. McCullar and Bronner were found not guilty of felony murder, but were found guilty of aggravated assault. On July 19, 2018, the trial court sentenced Caldwell to life imprisonment for felony murder. The remaining counts were merged for sentencing purposes. Caldwell filed a motion for new trial on August 6, 2018, which was amended through new counsel on July 12, 2019. After a hearing, the trial court denied the motion as amended on August 6, 2021. Caldwell filed a notice of appeal on August 20, 2021; the case was docketed to the term of this Court beginning in December 2021 and submitted for a decision on the briefs.

accomplice and her testimony was not corroborated and that the trial court erred by failing to give a curative instruction after the District Attorney's prejudicial closing argument. Although we conclude that the evidence was sufficient under the accomplice-corroboration statute to convict, we determine that the trial court should have provided a curative instruction for the District Attorney's erroneous argument and that the error was harmful, so we reverse.

The evidence presented at trial showed that on September 15, 2008, McPherson was in his apartment in Dougherty County, talking on the phone with a work colleague, Shabreka Perry. Perry testified that she and McPherson were having a casual conversation, when, through the phone, Perry heard a knock on McPherson's door; McPherson asked who it was, and a female voice answered, "Brittany." McPherson said, "Brittany? I don't know a Brittany." Next, Perry heard McPherson say, "You can have whatever you want. Just don't shoot." Perry testified that she then heard a "thump" and McPherson say, "Oh, man. That's f***ed up." After

Perry called 911 from another cell phone, she remained on the line with McPherson, but he was not responding to her. Perry testified that she heard "scruffling and furniture moving" but nothing else.

Sergeant Jennifer Hausman from the Albany Police Department responded to the scene and found McPherson dead. Sergeant Hausman testified that based on evidence collected at the scene, at least two shots were fired – one shot struck the bottom of the couch, and one shot went through the ceiling. The pillows from the couch were thrown around the living room, and the drawers were pulled out from a dresser located in the bedroom.[2] Sergeant Hausman testified that she had no knowledge of any DNA, fingerprint, or other physical evidence that would link any suspect to the crime scene. Another officer also responded to the crime scene that day, and his initial investigation showed that McPherson was a drug dealer.

The medical examiner who performed McPherson's autopsy

---

[2] Sergeant Hausman also testified that whoever ransacked the apartment did not take the computer, laptops, phone, or any other electronics including the television; the person also left the car keys and the car outside.

testified that McPherson died as a result of a gunshot wound and that stippling on the body showed that the barrel of the gun was within four feet of the victim when the fatal shot was fired.

Over a year later, in October 2009, a man came to the Albany Police Department to talk about the McPherson case. From this new information, Officer Charlie Roberts developed a lead, Shyquandria Williams; he contacted Williams and she agreed to come to Albany to provide information about the McPherson case. Based on Williams's statement, which was recorded, Caldwell, Jatarious Bronner, and Theojuana McCullar were determined to be suspects in McPherson's murder.

At trial, the State's case rested almost entirely on Williams's testimony. Williams testified that she and McCullar went to high school together, were good friends, and in 2008 lived together off and on. Williams was in a sexual relationship with Caldwell in 2008; she also knew Bronner but was not in a relationship with him. On September 15, 2008, Williams was with McCullar, Caldwell, and Bronner. The group was looking for marijuana and decided to drive

4

to Albany to find it. McCullar drove, Williams rode in the front passenger seat, and Caldwell and Bronner sat in the back seat. Williams testified that she "[thought Caldwell] made a phone call once" and that the group ended up at McPherson's apartment to purchase marijuana. Caldwell told Williams to knock on the apartment door because McPherson would answer the door for a woman. Williams went to the door and knocked, with Caldwell standing next to her. McPherson asked who it was, and she said, "I came to purchase some weed."[3] As McPherson was opening the door, Caldwell shoved Williams out of the way and entered the apartment. Williams turned from the apartment doorway and walked down the stairs back towards the car; as she was leaving, she heard a gunshot. She started running toward the car, where McCullar was waiting in the driver's seat. Williams got in, and McCullar pulled the car down the road and then made a U-turn to go back and pick up Caldwell and Bronner.

---

[3] Perry, the 911 caller, testified on cross-examination that she never heard the voice at McPherson's door mention anything about coming "to purchase some weed."

Williams testified that McCullar never left the car; Williams did not see Bronner enter the apartment, but saw him exiting the apartment. Williams testified that when she and Caldwell approached McPherson's door, they had a couple of dollars for a "sack of weed." But, she explained, after they left McPherson's apartment, the group drove back to McCullar's house where they drank alcohol and smoked more weed than they would have been able to purchase with the little money they had at the beginning of the night. The next morning, Williams heard about McPherson's death and saw on the news "them bringing his body out of the apartment." She testified that this was the same apartment she had been to the day before where she heard the gunshot.

After police officers interviewed Williams in 2009, she was charged with the murder of McPherson. Her murder warrant was issued on November 1, 2009, but she was never indicted, and the warrant was eventually dismissed on May 27, 2016. On the morning of Williams's testimony at trial in July 2018, she entered into an immunity agreement with the District Attorney whereby she was

granted immunity from prosecution in exchange for her agreement to testify.[4] Williams testified that in 2009, her attorney began negotiations with the District Attorney to secure immunity for her and as a result she was not indicted in 2011 along with Caldwell, McCullar, and Bronner. Williams's recorded interview with police officers in October 2009 was played for the jury. In that interview, Williams told the police, "I swear to God I have never seen [McPherson] before"; she admitted at trial that this statement was a lie. Williams also told police officers in the interview that Caldwell went to buy weed from McPherson, and the deal went bad, but that she was not there when it happened. Williams testified at trial that this statement was also a lie. Also during the interview, Williams stated that Caldwell was in the alley behind McPherson's apartment when he called McCullar to come pick him up and that Williams herself never got out of the car and did not hear a gunshot. Williams admitted that this story, too, was a lie. When Caldwell's defense

---

[4] Williams's murder warrant, warrant dismissal, and immunity agreement were all admitted into evidence at trial.

attorney asked Williams if she had "lost track of how many fibs [she had] already told," Williams answered, "Yes, ma'am." Neither Caldwell nor his co-defendants testified at trial, and there was no evidence admitted of any statements that they may have previously given.

1. In his first enumeration of error, Caldwell asserts that the evidence was insufficient to sustain his convictions under OCGA § 24-14-8 because: (1) Williams was the sole witness implicating Caldwell in the crimes, (2) she was an accomplice, and (3) her testimony was not corroborated.[5] On appeal, the State does not contest Caldwell's first and third assertions but argues that the evidence was sufficient because the jury could have determined that

---

[5] Caldwell does not assert that the evidence was insufficient as a matter of constitutional due process, nor could he on the basis of lack of accomplice corroboration. That is because "although Georgia law requires independent corroboration of an accomplice's testimony to secure a conviction, federal law does not require such corroboration and, thus, a failure to corroborate accomplice testimony [does] not offend constitutional due process." *State v. Grier*, 309 Ga. 452, 456 (2) (847 SE2d 313) (2020) (citing *Llewellyn v. Stynchcombe*, 609 F2d 194, 196 (5th Cir. 1980)). See also *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); *Grier*, 309 Ga. at 455-56 (2) ("As a matter of federal constitutional due process the evidence . . . was sufficient to sustain the convictions, regardless of whether it showed [the witness] to be an accomplice." (citation omitted)).

Williams was not an accomplice, such that her testimony did not need to be corroborated.

OCGA § 24-14-8 provides that "[t]he testimony of a single witness is generally sufficient to establish a fact," but in "felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient" to support a defendant's convictions but instead requires corroboration. "[W]here the evidence presented at trial could support a finding that a witness acted as an accomplice, it is for the jury to determine whether the witness acted in such a capacity." *Doyle v. State*, 307 Ga. 609, 612 (2) (a) (837 SE2d 833) (2020).

Here, evidence was presented that Williams was an accomplice, so that issue was properly submitted to the jury.[6] The jury was given instructions on Georgia's accomplice-corroboration

---

[6] It appears that the State's original theory, as explained in the District Attorney's opening statement, was that Williams was an accomplice to the robbery and shooting by participating in the planning of the robbery and luring McPherson into opening the apartment door. However, on the morning that Williams was expected to testify, the State announced that it had awarded Williams immunity from prosecution, and Williams then testified, identifying Caldwell and the other co-defendants as participating in the robbery and shooting.

requirement, as well as the test for determining whether a witness is an accomplice. Although the trial court originally stated an intention to give the jury a special interrogatory form to determine whether Williams was an accomplice, the court declined to submit a special verdict form to the jury on this issue. On appeal, Caldwell makes no argument that these instructions or the verdict form were erroneous in any way. Instead, Caldwell asserts that because there was no special verdict on the issue, the jury could have (and should have) determined that Williams was an accomplice, such that her uncorroborated testimony was insufficient to convict. We disagree.

Long-standing authority in Georgia provides that when the issue of whether a witness was an accomplice was submitted to the jury and there was evidence allowing the jury to find that the witness was *not* an accomplice, corroborating evidence is not required to sustain a guilty verdict on appeal. See, e.g., *Hargrove v. State*, 125 Ga. 270, 274 (54 SE 164) (1906) (even joint indictment and guilty plea of witness do[] not eliminate the jury question as to whether the witness was an accomplice); *Roberts v. State*, 55 Ga.

220, 222 (1875) (if the jury could have found, based on the evidence, "either that [the sole testifying witness] was not an accomplice, *or* that he was supported, if an accomplice, the verdict is sustained" (emphasis added)). See also *Sosebee v. State*, 156 Ga. App. 325, 326 (274 SE2d 717) (1980) (because the jury could conclude that the witness was not an accomplice, "[t]he fact that no corroborating evidence may have been presented does not . . . present grounds for reversal"); *Handsford v. State*, 147 Ga. App. 665, 665 (1) (249 SE2d 768) (1978) ("Under the evidence presented, the witness may have been an accomplice, or he may not have been. Leaving the issue to the jury was undoubtedly correct. . . . The jury was authorized to find either that the witness was not an accomplice, or that he was and his testimony was corroborated."). More recently, we have continued to hold that if the evidence authorizes a jury to find that the witness was not an accomplice, the evidence may be sufficient to convict without corroboration. See, e.g., *Montanez v. State*, 311 Ga. 843, 848-49 (1) (b) (860 SE2d 551) (2021) ("However, the evidence may also authorize a properly instructed jury to find that a witness

11

was not an accomplice, and in that case, the testimony of that witness is sufficient to convict the defendant."); *State v. Grier*, 309 Ga. 452, 456 (2) (847 SE2d 313) (2020) (holding that the evidence was legally sufficient because the jury could have found that the witness was not an accomplice, eliminating the necessity of corroborating testimony).[7]

Here, the jury was instructed on the pertinent legal principles, the general verdict did not specify whether the jury found that Williams was an accomplice, and the jury could have inferred from Williams's testimony that she had no prior knowledge of Caldwell's intent to shoot McPherson or do anything other than buy marijuana

---

[7] Although not cited by the parties, we have identified one case in which this Court has held that a new trial was required when the sole witness could have been an accomplice, but there was no corroborating evidence. See *Milton v. State*, 248 Ga. 192, 198 (2) (282 SE2d 90) (1981) ("[T]he trial court did err in not granting the defendant a new trial because under the charge of the court the jury could have found that [the witness] was an accomplice and that her testimony . . . was corroborated, when her testimony was not corroborated as required by law."). Because *Milton* has been implicitly overruled by subsequent cases such as *Montanez* and *Grier*, this Court is not bound by that outlier holding. See *White v. State*, 305 Ga. 111, 122 n.10 (3) (823 SE2d 794) (2019) ("When [the Supreme Court of Georgia] finds discordant opinions among its own horizontal precedents, . . . the court generally follows its decision in the most *recent* case, which must have tacitly overruled any truly inconsistent holding." (citation and punctuation omitted)).

and that she did not participate in the shooting. Thus, viewing the evidence in the light most favorable to the verdict, the jury could have reasonably concluded that Williams was not an accomplice in the charged crimes, meaning her testimony did not require corroborating evidence, and as a result, the evidence was sufficient to support Caldwell's conviction as a matter of Georgia statutory law. See *Montanez*, 311 Ga. at 848 (1) (b); *Grier*, 309 Ga. at 456 (2).

2. Caldwell also contends that the trial court erred by failing to give a curative instruction to the jury in response to comments made by the District Attorney during closing arguments that were prejudicial and referred to matters not in evidence.[8]

---

[8] The State asserts that only plain error review is available because, despite defense objections to the District Attorney's statements and requests for a curative instruction, no party actually provided the court with proposed language to use in a curative instruction. Pretermitting whether plain error review is available for this type of error, the objection and request for a curative instruction were sufficient to preserve the issue for ordinary appellate review. See *O'Neal v. State*, 288 Ga. 219, 221 (1) (702 SE2d 288) (2010) ("Nowhere in [OCGA § 17-8-75] is there a requirement for defense counsel to specifically request additional remedies after interposing an objection to the improper statements made by a prosecutor. . . . [T]his Court's most recent authorities interpreting the statute have allowed appellate review of a trial court's failure to . . . give a curative instruction where defense counsel did nothing more than interpose an objection to the prosecutor's improper statements.").

The trial court held multiple conferences during trial about the proper accomplice-corroboration instructions and whether to provide a special interrogatory for the jury to explicitly determine whether Williams was an accomplice, initially deciding to provide the special interrogatory. However, after counsel for the co-defendants gave their closing arguments, the trial court changed its mind about the special interrogatory and read into the record the instruction that it intended to give about how the jury was to determine whether Williams was an accomplice.[9]

---

[9] The trial court informed counsel that this was the instruction that it intended to give:

> The test for determining whether a witness is an accomplice is this: Could the witness herself have been indicted for the offenses as a [principal] or party to the crime? If she could have been so indicted as a [principal] or party to the crime, she is considered an accomplice under Georgia law.
>
> . . . .
>
> If she could not have been indicted as a [principal] or party to the crime, then she is not considered an accomplice under Georgia law. As far as the issue of possible indictment, when a grand jury hears a case to determine if a case is indicted, typically it is brought forward by the state and the potential defendant and defense counsel are not present. The grand jury sits not to determine innocence or guilt. But to assess whether there is an adequate basis for bringing a formal, criminal charge in making a decision on whether to indict a person with a criminal charge, the grand

14

The District Attorney then gave his closing argument. As to whether Williams was an accomplice, the District Attorney first informed the jury:

> My commitment is to not let those who have violated the law go uncharged. It is my commitment that I do not charge and convict anyone if there is no evidence to support them being convicted or charged. That's my role in this process.

He further argued:

> In fact, all people that are charged, the decision to make charges is the District Attorney's decision. When you look at the indictment, you'll see Gregory W. Edwards, District Attorney brought this indictment against these individuals . . . . [N]ot even the Judge has that role, to decide who goes forward in terms of charges. That's a decision that the District Attorney makes.

Moreover, the District Attorney told the jury:

> [S]he was not indicted. She was not charged, because she was not a knowing and willing accomplice to robbery and murder. . . . That's why I gave her a written agreement that this was my findings, that she should be immune

---

jury must determine whether there is probable cause to believe that a crime has been committed and where there is probable cause to formally charge a defendant by indictment.

. . . .

You, the jury, must decide whether Shyquandria Williams was an accomplice to defendant as to the charges you are considering in this bill of indictment.

15

from this case, because she didn't do anything that indicated that she was active in this situation. That's a decision I made. That's on me. . . . Now, again, I'll explain to you that she was not indicted as a party to the crime, because she was not an accomplice.

He concluded that "she was not indicted. She was not charged, because she was not a knowing and willing accomplice to robbery and murder."

Following closing arguments, and outside the presence of the jury, Bronner's and Caldwell's attorneys made a request for curative instructions to inform the jury that "the District Attorney is not the person that determines" whether Williams was an accomplice. The trial court denied the request, but noted the defense exception for the record. After the jury was charged with the instruction that the trial court had presented to the attorneys before the District Attorney's closing argument, Caldwell's attorney renewed her objection about the need for a curative instruction.[10]

---

[10] However, no one objected to the instructions about how the jury was to determine whether Williams was an accomplice, nor has Caldwell raised this as error on appeal. Therefore, we do not address the propriety of that charge. But we note that these instructions are not consistent with cases in

16

On appeal, Caldwell contends that the District Attorney's closing argument, as quoted above, was highly prejudicial and referred to matters not in evidence and that the trial court's final instructions to the jury were not sufficient to cure this prejudice. We agree.

OCGA § 17-8-75 provides:

> Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

The District Attorney referred to a number of matters not in

---

which we have held that even if a witness is indicted for the crimes charged, the jury is authorized to find that the witness is not an accomplice. See *Johnson v. State*, 288 Ga. 803, 806 (3) (708 SE2d 331) (2011) ("We have long held that it is not error to submit to the jury the question of whether a witness for the state was or was not an accomplice even where the witness has confessed to being an accomplice and has been jointly indicted with the defendant on trial." (cleaned up)); *Almand v. State*, 149 Ga. 182, 183 (b) (99 SE 795) (1919) (court did not err in instructing the jury to determine whether or not State's witness was an accomplice, even where "[the witness] was a confessed accomplice and was jointly indicted" in the crime). See also *Christian v. State*, 277 Ga. 775, 776 (1) (596 SE2d 6) (2004) ("[T]he fact that [the witness] was initially indicted for the victim's murder does not, without more, render her an accomplice.").

evidence concerning his role and authority in choosing whom to indict, his sworn duty not to indict those who have not committed a crime, and his sole authority to determine whom to indict. See *Conner v. State*, 251 Ga. 113, 123 (6) (303 SE2d 266) (1983) (concluding that it was error for the prosecutor to argue in closing about his prior prosecution experience and the frequency with which he had sought the death penalty); *High v. State*, 247 Ga. 289, 292 (7) (276 SE2d 5) (1981) (improper for district attorney to introduce himself in opening statement by saying "I've been your district attorney for the last nineteen years"), overruled in part on other grounds by *Wilson v. Zant*, 249 Ga. 373 (290 SE2d 442) (1982). Thus, the trial court erred in refusing to give a curative instruction as requested. See OCGA § 17-8-75.

However, "[a] trial court's error in not fulfilling its duty under OCGA § 17-8-75 is subject to harmless error analysis." *Stephens v. State*, 307 Ga. 731, 734 n.4 (1) (a) (838 SE2d 275) (2020) (citing *Arrington v. State*, 286 Ga. 335, 345-46 (16) (a) (687 SE2d 438 (2009)). "For nonconstitutional harmless error, the State has the

18

burden to show that it was highly probable that the error did not contribute to the verdict." *Bozzie v. State,* 302 Ga. 704, 708 (2) (a) (808 SE2d 671) (2017). In conducting this analysis, "we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done." *Saxton v. State*, 313 Ga. 48, 51 (2) (b) (867 SE2d 130) (2021) (citation and punctuation omitted).

Here, the evidence that Williams was an accomplice was strong. She admitted that she participated in the plan to go to McPherson's apartment to obtain marijuana and that she knocked on his door because the group had decided that McPherson would more likely open the door for a woman. Although Williams did not go into the apartment, she heard a gunshot as she was turning away. She then left with the group and smoked the marijuana obtained from McPherson's apartment, which she noted was more in quantity than the money that the group had for the purchase. See *Harper v. State*, 298 Ga. 158, 160 (780 SE2d 308) (2015) ("Whether a person is a party to a crime may be inferred from that person's presence, companionship, and conduct before, during, and after the crime."

19

(citation and punctuation omitted)). Later, Williams was questioned by the police about the incident, and at trial, she admitted that she lied repeatedly in that interview. Moreover, a warrant was obtained for her arrest for the murder, but on the day of her testimony at trial, Williams entered into an immunity agreement in exchange for her testimony.

During the arguments regarding Caldwell's motion for a directed verdict, the District Attorney conceded to the trial court that the State had offered no evidence, other than Williams's testimony, that would place Caldwell or his co-defendants at the crime scene. Knowing that no evidence would corroborate Williams's testimony if she were found to be an accomplice, and that the trial court had in fact concluded that there was no corroborating evidence before denying Caldwell's motion for a directed verdict, the District Attorney argued in closing that regardless of the evidence in the record, the District Attorney was the sole arbiter of whether Williams could be indicted and that she was not indicted because he made that determination, implying based on the jury instruction

20

that she could not be an accomplice. The prejudicial nature of these statements was compounded by the District Attorney's assertion of authority over that of the trial court. Even though the trial court subsequently instructed the jury that it was to determine whether Williams was an accomplice, the trial court also told the jury that whether a witness is an accomplice is based on whether she could be indicted for the same crimes. The District Attorney's arguments suggested to the jury that because of the District Attorney's authority, the decision about whether to indict (and consequently whether Williams was an accomplice) had already been made, so the jury did not have to make that determination, and the trial court's subsequent charge to the jury can be reasonably construed as reinforcing that argument.

For these reasons, we conclude that the State has not carried its burden of showing that it is highly probable that the District Attorney's uncorrected argument did not contribute to the verdict. The only way for the jury to properly find Caldwell guilty, given the lack of corroborating evidence, was to find that Williams was not an

accomplice, and we cannot say that it is highly probable that the District Attorney's argument did not contribute to that finding. Thus, we conclude that the failure to provide a curative instruction was harmful error, and we must reverse Caldwell's convictions. See *Jones v. State*, 292 Ga. 656, 661-62 (2) (740 SE2d 590) (2013) (where evidence against defendant was not overwhelming, the prejudice from prosecutor's statements in closing argument regarding the defendant's involvement in a prior gang related shooting was not cured by trial court's general instruction that "opening statements and closing arguments are not evidence" because the "general instruction given by the trial court was an inadequate curative measure and did not serve 'to remove the improper impression from [the jurors'] minds,' as required by OCGA § 17-8-75").

In so doing, we acknowledge that this Court has often concluded that an improper argument or comment by a prosecutor was not harmful error, particularly where the evidence of guilt was strong. See, e.g., *Conner*, 251 Ga. at 123 (6) (prosecutor's erroneous argument in closing was ultimately harmless error); *High*, 247 Ga.

at 292 (7) (district attorney's improper statement was harmless error). But we cannot reach the same conclusion in this case. The evidence that Williams was an accomplice was strong, and her credibility was significantly impeached by her prior inconsistent statements and immunity deal; there was no corroborating evidence of Caldwell's guilt at all; the District Attorney's arguments were clearly improper; and the trial court overruled requests to cure the inappropriate arguments. Under these circumstances, we must conclude that the error in this case was harmful.

*S22A0796 (A7-016)Judgment reversed. All the Justices concur.*

MCMILLIAN, Justice, concurring.

Although I believe that Division 1 of the Court's opinion faithfully applies our precedent and correctly concludes that *Milton v. State*, 248 Ga. 192, 198 (2) (282 SE2d 90) (1981), is out of line with the great weight of authority, I write separately to express my concern that this Court has over time essentially gutted the accomplice corroboration requirement currently found in OCGA § 24-14-8.[11] The rule is apparently this – so long as the jury is properly

---

[11] A version of this statute has been in Georgia's code since its very conception. Georgia enacted its first comprehensive code in 1860, and "[t]hat code went into effect January 1, 1863." Jefferson James Davis, *The Georgia Code of 1863: America's First Comprehensive Code*, 4 J. S. LEGAL Hist. 1 (1995-1996). Referred to as the Code of 1863, it included the rules of evidence, and the first version of Georgia's accomplice corroboration statute. See Paul S. Milich, *Georgia's New Evidence Code – An Overview*, 28 GA. ST. U. L. REV. 379, 380 (2012). That initial version of the statute provided:

> The testimony of a single witness is generally sufficient to establish a fact. Exceptions to this rule are made in specified cases: such as to convict of treason or perjury; in any case of felony, where the only witness is an accomplice; and to rebut a responsive statement in an answer in equity – in these cases (except in treason) corroborating circumstances may dispense with another witness.

Ga. Code of 1863, Title 10, Chapter 1, § 3678: Number of Witnesses Necessary. The language in the statute regarding accomplice corroboration in felony cases

charged on the definition of an accomplice and the corroboration requirement, no corroboration is required even if the witness admits to being an accomplice and the State treats her as one. And when there is no special interrogatory to require the jury to determine explicitly whether the witness is an accomplice, a verdict of guilty is upheld based solely on the witness's testimony without a scintilla of corroborating evidence.

This rule is problematic in cases like this one where there was no evidence, as a matter of law, from which the jury could have determined that Williams's testimony was corroborated, yet the trial court is permitted to charge that if the jury determines that the witness is an accomplice, there must be corroborating evidence to convict, which suggests that there is some evidence from which a jury could reasonably find corroboration. And all we have at the end of the day is a general verdict of guilty, which could have rested on

---

has remained materially the same as it has been carried forward into new codes. See Code 1868, § 3702; Code 1873, § 3755; Code 1882, § 3755; Civil Code 1895, § 5156; Penal Code 1895, § 991; Civil Code 1910, § 5742; Penal Code 1910, § 1017; Code 1933, § 38-121; former OCGA § 24-4-8; and OCGA § 24-14-8.

an erroneous determination that Williams's testimony was corroborated. We recognized the same problem in *Milton*. See *Castell v. State*, 250 Ga. 776, 792 (301 SE2d 234) (1983) ("The [*Milton*] court, however, erroneously gave a charge to the jury which would have allowed the jury to find that the testimony of the alleged accomplice had been corroborated, when there was no evidence in the case from which the jury could have found such corroboration.").

But our cases have generally "deem[ed] harmless a jury instruction that indicates that a defendant could be found guilty under a theory for which there was no evidence or even argument." *Wilkins v. State*, 308 Ga. 131, 139 (839 SE2d 525) (2020). See *Wetzel v. State*, 298 Ga. 20, 36 n.17 (779 SE2d 263) (2015) ("[G]enerally it is not [harmful] error to charge the jury on a portion of the Code section that may be inapplicable under the facts in evidence.") (citation and punctuation omitted). Thus, even if a defendant like Caldwell asserts unsuccessfully at trial that the trial court should have instructed the jury that if it found the witness to be an accomplice, it has to acquit for lack of corroborating evidence and is

found guilty, it likely would not make a difference in the result of the appeal.

Moreover, I find this Court's application of the accomplice corroboration requirement in felony cases to be particularly troubling because we have repeatedly held that where a general verdict in a civil case prohibits the Court from determining if the jury's verdict was returned on a proper basis, a new trial is required. See, e.g., *Southeastern Pain Specialists, P.C. v. Brown*, 303 Ga. 265, 273 (811 SE2d 360) (2018) (reversing because "when a case is submitted to a jury on both erroneous and proper bases and the jury returns a general verdict such that we cannot determine on which basis the verdict was entered, the verdict cannot stand");[12] *Ga. Power Co. v. Busbin*, 242 Ga. 612, 616-17 (250 SE2d 442) (1978) (finding that because plaintiff's case against his former employer and former supervisor was erroneously submitted to jury on

---

[12] *Brown* also held that in civil cases, "[a]n error in the charge that injects issues not raised by the pleadings and evidence is presumed to be harmful." 303 Ga. at 272 (2) (b) (citing *Seibers v. Morris*, 226 Ga. 813, 816 (3) (177 SE2d 705) (1970)). However, as explained above, in criminal cases, such errors are usually deemed harmless. See *Wilkins*, 308 Ga. at 139.

multiple theories, although correctly submitted on at least one theory, "the verdict cannot stand for the reason that this court cannot determine whether the verdict was entered upon a proper basis"); *Southern R. Co. v. Hardin*, 107 Ga. 379, 383 (33 SE 436) (1899) ("As it is uncertain which cause of action the jury considered in awarding the damages, they being at liberty under the charge of the court to consider both, [and where there was no evidence to support one of the causes of action,] the verdict must be set aside and a new trial awarded."). See also *Godwin v. Godwin*, 265 Ga. 891, 892 (463 SE2d 685) (1995) (same; citing *Busbin*, 242 Ga. at 617)). It is incomprehensible and unfair that criminal defendants do not get the same benefit of the doubt and a new trial under similar circumstances. Cf. *Williams v. Harvey*, 311 Ga. 439, 451 (1) (b) (858 SE2d 479) (2021) (discussing need to "course-correct an important aspect of appellate procedure by not affording, without a statutory or constitutional basis, civil litigants greater rights to appellate review than criminal defendants in non-death penalty cases").

However, even though I have doubts about how this Court has

applied the accomplice corroboration requirement in circumstances such as this one, it is not clear to me that overturning more than a century worth of case law is the right solution at this juncture given the relatively few reported cases in which there is no corroboration at all. Instead, if defendants request, and trial courts permit, the use of a special interrogatory on the issue of whether the witness is an accomplice would allow appellate courts to be able to review whether OCGA § 24-4-18 was properly applied. Of course, this assumes that the trial court, in its discretion, will permit the use of special interrogatories.[13] See *Rogers v. State*, 282 Ga. 659, 661 (2) (b) (653 SE2d 31) (2007), overruled on other grounds by *State v. Lane*, 308 Ga. 10, 23 (838 SE2d 808) (2020) (rejecting contention that trial court abused its discretion by not submitting to the jury special interrogatories on mental capacity).

For these reasons, I write separately to express my concerns about Division 1 and posit a potential resolution. However, if the

---

[13] I recognize that the trial court and the State may have the incentive to use a general verdict because any error will be less apparent and therefore the chance of affirmance will be greater.

Court begins to see the State taking advantage of the accomplice corroboration rules to present felony cases without corroboration, insulated from appeal through general verdicts, I would encourage the Court to revisit the issue.

I am authorized to state that Justice Colvin joins this concurrence.