321 Ga. 251
FINAL COPY


S25A0212. BERRY v. THE STATE.


COLVIN, Justice.

Appellant Christopher Berry appeals his convictions for malice murder and other crimes related to the shooting death of Cordeldrick Laquinn Brooks.[1] Appellant argues that the trial court

[1] The crimes occurred on September 22, 2015. On December 15, 2015, a Richmond County grand jury returned an eight-count indictment against Appellant and Kameron Reese and a seven-count indictment against Samantha Griffin. Appellant was charged with malice murder (Count 1), felony murder (Count 2), kidnapping (Count 3), criminal attempt to commit armed robbery (Count 4), hijacking of a motor vehicle (Count 5), arson in the second degree (Count 6), possession of a firearm during the commission of a crime (Count 7), and possession of a firearm by a convicted felon (Count 8). Before trial, Reese pled guilty to some of the charges against him pursuant to a negotiated plea deal and agreed to testify for the State. Griffin was set to be tried separately from Appellant.

A jury trial was held from April 24 through 28, 2018. Count 4 was nolle prossed, and the jury found Appellant guilty on all the remaining counts. The trial court sentenced Appellant to life in prison for malice murder (Count 1) and for kidnapping (Count 3). The trial court also imposed ten-year concurrent prison sentences for hijacking a motor vehicle (Count 5) and arson in the second degree (Count 6) and five-year consecutive prison sentences for possession of a firearm during the commission of a crime (Count 7) and possession of a firearm by a convicted felon (Count 8). Appellant's felony-murder count (Count 2) was vacated by operation of law.

Appellant moved for a new trial on April 30, 2018, and amended the motion through new counsel on March 19, 2019. The trial court entered an order denying Appellant's motion for new trial on July 30, 2019, and Appellant

erred in denying his motion for directed verdict and that trial counsel was ineffective for failing to object to hearsay. As explained below, however, Appellant has not shown that the trial court erred in denying his motion for directed verdict, and his ineffective-assistance-of-counsel claim is waived. Accordingly, we affirm his convictions.

1. The trial evidence showed the following. Toni Murray, the mother of Brooks's child, testified that Brooks left their home driving a white GMC Envoy on the night of September 21, 2015. Cell phone records and mapping data showed that Brooks's cell phone was in "the North Augusta area" between 3:18 a.m. and 3:41 a.m. on September 22, 2015. Brooks's phone number then interacted with co-defendant Kameron Reese's phone number a total of six times between 4:00 a.m. and 4:08 a.m. By 4:08 a.m., Brooks's cell phone had traveled to downtown Augusta where Brooks's and Reese's cell

timely filed a notice of appeal directed to this Court on August 20, 2019. The appeal was docketed to this Court's term beginning in December 2024 and submitted for a decision on the briefs.

phones were "hitting off the same tower" and where Samantha Griffin lived.

At trial, Reese testified that he had pled guilty to some of the charges and that he was required to testify pursuant to his plea agreement. Reese was nevertheless a hostile witness for the State, and the State admitted and played for the jury portions of Reese's police interview. In his police interview, Reese made the following statements. On the night of September 21, 2015, Brooks came to Griffin's home, where Reese, Appellant, and Griffin were present. When Brooks entered Griffin's home, Appellant "rushed" up to Brooks at the door with a gun, hit Brooks in the face with the gun, told him to move, and began "talking s**t." Reese told Appellant to put his gun away, and, when Brooks asked Reese to tell Appellant not to hurt him, Reese reassured Brooks, saying, "ain't nothing [go]nna happen." Brooks then told Appellant that he knew where some "weed" was, and that he could take Appellant to a hotel to purchase some. Brooks asked Reese to ride along with him and Appellant because Brooks was afraid to travel with Appellant alone.

3

And at some point, Appellant made Brooks strip before making him put his clothes back on without his boxers, shoes, or socks.

Reese said that Reese, Brooks, and Appellant got into the Envoy, and that Brooks drove them some way before reaching the intersection of Lumpkin and Old McDuffie Roads. Cellular location data confirmed that Reese's cellular device was present in the area of that intersection around 5:16 a.m. And Reese told police that, once Brooks got to the intersection, Brooks jerked the car to the right and hit a pole. Reese said he opened his door to get out of the vehicle and began to run away before hearing three gun shots. And he claimed throughout his police interview that "I didn't take [Brooks] for a ride," "I didn't know [Appellant] was gonna do that," "I never had a gun," and "I didn't go along with it."

Reese gave different versions of how he fled the scene during the police interview. At one point, he claimed that a Toyota Camry picked him up as he was running away. But he later claimed that Appellant drove the wrecked Envoy to pick him up; that during the car ride from the scene, Appellant said that he shot Brooks; and that

Reese and Appellant set the Envoy on fire. Cell phone records showed that Reese's and Appellant's phone numbers interacted seven times between 5:16 a.m. and 5:23 a.m. that day.

A witness who was traveling through the area that morning testified that he found Brooks lying injured and without shoes at the intersection of Lumpkin and Old McDuffie Roads. When officers arrived at the scene, they found Brooks, a damaged telephone pole, and a vehicle bumper and grill lying nearby.

Brooks died shortly after the incident. A medical examiner testified that Brooks sustained two gunshot wounds — one to the back and one to the left hip — and that he died from "gunshot wounds of [the] torso."

2. Appellant argues that the trial court erred in denying his motion for directed verdict because there was no evidence corroborating co-defendant Reese's statement inculpating Appellant. This claim fails.

"The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of

the evidence to support a conviction." *Clements v. State*, 317 Ga. 772, 783 (1) (896 SE2d 549) (2023) (citation and punctuation omitted). To assess the sufficiency of the evidence,

> we view all of the evidence presented at trial in the light most favorable to the verdicts and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted.

Id. at 789 (4) (citation and punctuation omitted).

Georgia law provides that in "'felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient' to support a defendant's convictions" absent corroboration. *Caldwell v. State*, 313 Ga. 640, 643 (1) (872 SE2d 712) (2022) (quoting OCGA § 24-14-8). However, "when the issue of whether a witness was an accomplice was submitted to the jury and there was evidence allowing the jury to find that the witness was *not* an accomplice, corroborating evidence is not required to sustain a guilty verdict on appeal." Id. at 644 (1) (emphasis in original). And we have held that a jury can find that a witness was not an accomplice even if, as here, the witness pled guilty to charges. See

6

id. (noting that "even [the] joint indictment and guilty plea of [a] witness do not eliminate the jury question as to whether the witness was an accomplice").

Here, the jury was properly instructed on the requirement for corroboration of an accomplice's testimony and was authorized, based on the evidence presented at trial, to find that Reese was not an accomplice, making corroboration unnecessary as a matter of Georgia statutory law. See *Caldwell*, 313 Ga. at 645 (1). Specifically, the jury heard evidence that Reese tried to get Appellant to put his gun away after pointing it at Brooks; that Reese only rode with Brooks and Appellant because Brooks asked him out of fear of Appellant; that only Appellant had a gun; that Reese did not know Appellant would shoot Brooks; and that, by the time the shots were fired, Reese was running away from the crash. Based on this evidence, the jury could have reasonably concluded that Reese was not an accomplice. And as a result, the trial court did not err in denying Appellant's motion for directed verdict. See id. (holding that the properly-instructed jury could have found that "[the State's sole

witness implicating the appellant in the crimes] was not an accomplice" because the jury was "instructed on the pertinent legal principles, the general verdict did not specify whether the jury found that [the witness] was an accomplice, and the jury could have inferred from [the witness's] testimony that she had no prior knowledge of [the appellant's] intent to shoot [the victim] or do anything other than buy marijuana"); *Fisher v. State*, 309 Ga. 814, 819 (2) (a) (848 SE2d 434) (2020) (holding that "[t]he jury could . . . determine that [the witness] was not an accomplice," and thus that corroboration was not necessary, where the jury was "properly charged" and was "authorized to credit [the witness's] testimony that he had no prior knowledge that [the appellant] would shoot or kill [the victim] and that [the witness] drove [the appellant] away from the shooting out of fear that [the appellant] might shoot him too") (emphasis omitted); *State v. Grier*, 309 Ga. 452, 454-456 (1)-(2) (847 SE2d 313) (2020) (holding that the "evidence authorized the jury to find that [a witness] was not an accomplice at all" where he testified that he wanted "nothing to do with" holding the victims at

8

gunpoint, despite the fact that he testified to being present when the armed robbery was planned and carried out, fleeing with the co-conspirators, and receiving money to "stay quiet").

3. Appellant also claims that trial counsel was ineffective for failing to object on hearsay grounds to Investigator Ken Rogers's testimony identifying Appellant's phone number. This claim, however, is waived. In Appellant's amended motion for new trial, which he filed through new counsel, Appellant asserted only that trial counsel was ineffective for "fail[ing] to counsel [Appellant] on the importance of the cell-phone records."[2] He did not assert that trial counsel was ineffective for failing to object to Investigator Rogers's testimony identifying Appellant's phone number. Thus, this claim is not properly before us on appeal. See *Jones v. State*, 294 Ga. 501, 503 (2) (755 SE2d 131) (2014) (concluding that the appellant's ineffective-assistance-of-counsel claim was not properly before us because the appellant did not specifically raise the issue asserted on appeal "in his motion . . . or at the hearing" in the trial

---

[2] Appellant later withdrew this claim, and he does not pursue it here.

9

court).

*Judgment affirmed. All the Justices concur.*

Decided March 4, 2025.

Murder. Richmond Superior Court. Before Judge Blanchard.

*J. Pete Theodocion; Frost & Carey, Tyler A. P. Carey*, for appellant.

*Jared T. Williams, District Attorney, John M. Kraft, Assistant District Attorney; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Meghan H. Hill, Clint C. Malcolm, Senior Assistant Attorneys General, Ashleigh D. Headrick, Assistant Attorney General*, for appellee.