NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: June 24, 2025

S25A0531.  GAYLE v. THE STATE.

MCMILLIAN, Justice.

Taj Dialo Gayle was convicted of felony murder predicated on kidnapping in connection with the shooting death of Melanie Steele.[1]

---

[1] Steele died on the night of September 13, 2019.  On August 3, 2022, a Chatham County grand jury indicted Gayle, John Bailey, Justin Path, and Marcus Wilson for various crimes related to Steele's death. As for Gayle, he was indicted for felony murder predicated on conspiracy to sell or purchase controlled substances (Count 1), conspiracy to commit the sale or purchase of controlled substances (Count 2), felony murder predicated on kidnapping (Count 3), kidnapping (Count 4), armed robbery (Count 5), and possession of a firearm during commission of a felony (Count 6).  Wilson pleaded guilty before trial to reduced charges of tampering with evidence and false imprisonment, agreeing to testify truthfully as part of his plea deal. The State nolle prossed Counts 5 and 6 before trial.  At the joint trial of Gayle and Bailey, held in September 2023, the jury found Gayle not guilty of Counts 1 and 2, but guilty of Counts 3 and 4.  The trial court merged Count 4 into Count 3 for sentencing purposes and sentenced Gayle to life in prison without the possibility of parole.

Gayle filed a timely motion for new trial, which was amended by new counsel.  Following a hearing, the trial court denied Gayle's motion for new trial, as amended, on November 12, 2024.  Gayle filed a timely notice of appeal on November 26, 2024, and the case was docketed to the April 2025 term of this Court and thereafter submitted for a decision on the briefs.

On appeal, Gayle argues that the evidence was insufficient under Georgia statutory law because witness Marcus Wilson was an accomplice and his testimony identifying Gayle's participation in the murder was not corroborated. For the reasons that follow, we affirm.

1. The evidence presented at trial showed that Steele arranged with a friend to sell drugs to John Bailey, but instead, Bailey, along with Gayle, kidnapped Steele, drove her to a desolate area, and shot her. Wilson was also present when Steele was shot.

The primary evidence against Gayle came from Wilson's trial testimony. According to Wilson, on the evening of September 13, 2019, Bailey called him asking him to come over to a friend's house to do Bailey a "favor." Upon arriving at the house, Wilson met up with Bailey and Gayle; Bailey said he was planning to buy some "dope" and asked Wilson to follow him in his car because he needed a ride back after the transaction. Wilson agreed, and Bailey and Gayle then walked down the street, saying they had to get the money.

Shortly afterward, Wilson saw a "young . . . lady" in a white Dodge Neon turn down the street. Afterward, Bailey returned, driving the white Neon with Gayle in the backseat, but the woman was nowhere in sight. Wilson followed the car that Bailey was driving to a road "that didn't have much street lights on it, or any buildings," and when they stopped and got out of their cars, Bailey "told [Wilson] that he was about to do something. He was about to shoot this person that was – that they had in the back of the car." Wilson testified that in response, "I pretty much was, like, what the F. And I started kinda asking him, like, why he was doin' it. And I was like begging and pleading with him to not do that because he asked me to come with him, and I didn't wanna be a part of that." Bailey and Gayle then pulled the person from the back of the car wrapped in "what looked like a bedsheet," put her on her knees, and Bailey shot her. Wilson testified that "I saw a flash, and I turned around, and I ran . . . as fast as I could" and drove away.

Wilson then called Bailey, who didn't pick up but called him back, and Wilson asked him "what the F did he just do and why did

3

he just do that."  Bailey asked Wilson to meet him back where they had first met, and Wilson did so.  Wilson testified that he thought if he did not go back to meet them, "they might start to think that I went to say something; so I just went back and so I could get that night over with" because "I was afraid that they'll think that I wanted to say something or that I went to tell on them," perhaps to Wilson's father, who "used to be in law enforcement."

Wilson met up with Bailey and Gayle, and Gayle got in the car with Wilson, telling him to follow Bailey, who drove the Neon.  At one point early in the trip, they lost Bailey, but they then located him and followed him to Bonaventure Road, where Gayle told Wilson to stop, and Bailey left the white Neon, got into Wilson's car, and passed his gun to Gayle.  Wilson testified that he was "scared" and "confused," saying, "I thought that I might have kinda – I might have been next at that point."  Wilson said that he then dropped Gayle and Bailey off and "went to get some weed to try to block out what I had just saw."

Detectives investigating Steele's disappearance learned that

4

Wilson may have been involved in her disappearance. When they first spoke to Wilson, he denied any involvement. Months later detectives interviewed Wilson again, and after he again initially denied involvement, he then told them about the murder. Wilson testified at trial that he did not originally tell detectives everything that happened and that even when he began telling them what really happened, he "told bits and pieces" because he was still "afraid" of being targeted as a "snitch" and that law enforcement "would think that I had something to do with [Steele's murder]."

Eventually, Wilson told detectives the version of events comporting with his trial testimony, summarized above, and took them to the location of the murder, where they discovered Steele's skeleton, a shell casing, and a "piece of cloth" that looked like "a shirt, pillowcase, or whatever." The medical examiner determined that Steele's cause of death was "a gunshot wound [to] the back of the torso." Detectives also discovered Steele's abandoned vehicle where Wilson said it had been dumped.

Cell phone records introduced at trial placed the phones of

Gayle, Bailey, Wilson, and Steele together in the same area at the same time where and when Wilson said they had met before the murder and in the same area and at the same time where and when he said the murder occurred and where Steele's remains were found. Those records also placed the phones of Gayle, Bailey, and Wilson together in the same area and at the same time where and when Wilson said they had dumped Steele's car. Those records further showed multiple communications between the various parties, including calls between the phones of Bailey and Wilson, and a call from Gayle's phone to Bailey's phone at the time Gayle and Wilson were trying to locate where Bailey was when they lost him on the way to abandon Steele's car, all in accordance with Wilson's account of events.

After the State rested its case at trial, defense counsel moved for a directed verdict on all counts, arguing, "there is zero evidence to corroborate Marcus Wilson." The trial court denied the motion, stating that "there are certain factual determinations that would have to be made" and that it would "let the jury make that

6

determination with proper instructions from the [c]ourt." The trial court later charged the jury on accomplice corroboration, including that "[t]he testimony of an accomplice alone is not sufficient to warrant a conviction," and that "[w]hether or not any witness in this case was an accomplice is a question for you to determine from the evidence in the case." And, in denying Gayle's motion for new trial, the trial court ruled: "The jury could have decided that Marcus Wilson was not an accomplice for which corroboration of his testimony was not needed. On the other hand, if the jury found that he was an accomplice, the [c]ourt finds that sufficient forensic and circumstantial evidence corroborates his testimony."

2.     On appeal, Gayle argues that the evidence did not support the trial court's ruling that the jury could have determined that Wilson was not an accomplice. Gayle argues that the evidence showed that Wilson knew the plan was for him to participate in the criminal act of dealing drugs; he actively and willingly participated; he was a co-indictee with Gayle and Bailey; and Wilson pleaded guilty to tampering with evidence and false imprisonment.

7

According to Gayle, this evidence could only support a finding that Wilson was an accomplice to the kidnapping and murder, and because, Gayle argues, Wilson's testimony was the only evidence implicating him in the crimes of kidnapping and felony murder predicated thereon and was not corroborated, the evidence was insufficient under OCGA § 24-14-8.[2] We disagree.

We have explained that "where the evidence presented at trial could support a finding that a witness acted as an accomplice, it is for the jury to determine whether the witness acted in such a capacity." *Doyle v. State*, 307 Ga. 609, 612 (2) (a) (837 SE2d 833) (2020). And "[l]ong-standing authority in Georgia provides that when the issue of whether a witness was an accomplice was submitted to the jury and there was evidence allowing the jury to find that the witness was *not* an accomplice, corroborating evidence

---

[2] OCGA § 24-14-8 provides:
The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including prosecutions for treason, prosecutions for perjury, and felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness, except in prosecutions for treason.

8

is not required to sustain a guilty verdict on appeal." *Caldwell v. State*, 313 Ga. 640, 644 (1) (872 SE2d 712) (2022) (citing cases); see also *Montanez v. State*, 311 Ga. 843, 848-49 (1) (b) (860 SE2d 551) (2021) ("[T]he evidence may [ ] authorize a properly instructed jury to find that a witness was not an accomplice, and in that case, the testimony of that witness is sufficient to convict the defendant."). Moreover, "we have held that a jury can find that a witness was not an accomplice even if, as here, the witness pled guilty to charges." *Berry v. State*, 321 Ga. 251, 254 (2) (913 SE2d 684) (2025) (citing *Caldwell*, 313 Ga. at 644 (1)).

Here, the trial court instructed the jury on the principles related to accomplice corroboration, which Gayle does not challenge on appeal. The jury heard and considered Wilson's testimony that he agreed to follow Bailey to an apparent drug transaction so he could give Bailey a ride home and that he was unaware that Bailey and Gayle had kidnapped Steele—or that she was even present— until immediately before they pulled her from the car and shot her despite him begging them not to. Wilson testified that he fled the

scene upon the shooting and that he then only agreed meet Gayle and Bailey afterward and drive them because he feared for his own life. This was evidence from which the jury could have reasonably found that Wilson had no prior knowledge of the plan to kidnap and shoot Steele and that he did not participate in the shooting. See *Caldwell*, 313 Ga. at 645 (1) ("[T]he jury could have inferred from [the witness's] testimony that she had no prior knowledge of Caldwell's intent to shoot [the victim] or do anything other than buy marijuana and that she did not participate in the shooting."); *Fisher v. State*, 309 Ga. 814, 819 (2) (a) (848 SE2d 434) (2020) (holding that "[t]he jury could . . . determine that [the witness] was *not* an accomplice," and thus that corroboration was not necessary, where the jury was "properly charged" and was "authorized to credit [the witness's] testimony that he had no prior knowledge that [the appellant] would shoot or kill [the victim] and that [the witness] drove [the appellant] away from the shooting out of fear that [the appellant] might shoot him too"). See generally *Palencia v. State*, 313 Ga. 625, 629 n.7 (872 SE2d 681) (2022) ("[A]n accomplice is

10

someone who shares a common criminal intent with the actual perpetrator of a crime.") (cleaned up). Because the evidence, viewed in the light most favorable to the verdict, authorized the jury to conclude that Wilson was not an accomplice to the kidnapping and shooting, corroborating evidence was not required, and the evidence was sufficient to support Gayle's conviction as a matter of Georgia statutory law.[3] See *Berry*, 321 Ga. at 254-55 (2); *Caldwell*, 313 Ga. at 645 (1). Gayle's appeal therefore fails.

*Judgment affirmed. Peterson, CJ, Warren, PJ, and Bethel, Ellington, LaGrua, Colvin, and Pinson, JJ, concur.*

---

[3] In so holding, we express no opinion about whether there existed sufficient corroborative evidence in this case.